DEBORAH M. SMITH
Acting United States Attorney

RETTA-RAE RANDALL
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: rettarae.randall@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RONALD LEE PHILLIPS,<br><br>Defendant. | No. 3:03-cr-0078-JKS<br><br>**GOVERNMENT'S OPENING<br>BRIEF REGARDING:<br>ISSUE OF RESTITUTION** |

INTRODUCTION

Ronald Lee Phillips ("Phillips") pled guilty to defrauding the Veteran's Affairs Vocational Rehabilitation Self-Employment Program. Docket ("Dkt.") 42. In essence,

he used Veterans Administration ("VA") funds to fraudulently purchase 28 buses, claiming that the funds were being used to repair and refurbish the buses only. Phillips could not legally buy **any** buses with VA funds. His conviction has been affirmed by the Ninth Circuit Court of Appeals, but the case was remanded to the district court for the "sole purpose of conducting a hearing to determine the fair market value of the buses as of September 18, 2002." Dkt. 81. The Court found that the original loss to the VA was properly determined by the district court to be $450,375.57. At the original sentencing, the district court offset only $91,000 against that amount, which was the amount the VA, through its agent, received when the buses were sold. Dkt. 91 at 2. Instead, the Ninth Circuit found that the offset against the loss amount should be the fair market value of the buses when Phillips relinquished control of them to the VA and Northwest Bus Sales on September 18, 2002. This court now has to determine the fair market value of the buses as of that date.

The government presented the testimony of the two individuals - Russell Vandersnick and Dan Weatherington - who saw the actual buses and who were involved in their eventual sale. Neither individual was paid for his testimony. Id. at 37-38. Russell Vandersnick ("Vandersnick"), owner of Northwest Bus Sales, worked with Dan Weatherington ("Weatherington') and the VA to sell the over-the-road

motor coaches which had been obtained by the fraud of Ron Phillips. Id. at 6-7. Vandersnick had never met Phillips prior to dealing with the buses. Id. at 6. Weatherington knew Phillips because Weatherington had been hired by Phillips to work on the buses and get them sale-ready. Id. at 10.

The market for over-the road motor or highway coaches is completely different than the market for transit buses and school buses. Id. at 7. both Vandersnick and Weatherington saw the buses and inspected them. The year, the mileage on the bus, the amount of rust, the condition of the engine, the condition of the transmission, how the vehicle drove, the condition of the tires, the condition of the interior and exterior were taken into consideration to determine the fair market value ("FMV") of the buses. Id. at 11, 80. The FMV's given by Vandersnick and Weatherington are summarized in Exhibits 2, 2A, 3 and 3A. (These Exhibits are based on Attachment A to Exhibit 1, which listed the original strike prices the signatories hoped to attain; written onto Attachment A are the FMV's provided by Vandersnick and Wetherington respectively.)

The defendant's paid expert, Arnold Belanger, had limited experience with highway coaches (Dkt. 92 at 2-45) and never saw the 28 buses involved in the fraud. Id. at 2-49. Belanger admitted that various pictures of one bus shown him by the defendant for use in his appraisal, defendant's Exhibits P through T, involved a bus

which was not one of the 28 buses involved in the case. Id. at 2-67, 2-74

### STRIKE PRICES AGREED TO IN EXHIBIT 1.

This agreement was for Northwest Sales to secure the buses, sell them, and the pay of the list of debtors, trying to achieve as much money as possible for the VA and Phillips. Id. at 9. Vandersnick had not seen any of the buses listed in the agreement as of September 18, 2002. Id. at 9, 10-11. Many of the buses were in the possession of Dan Weatherington, who had been hired by Phillips to acquire all of the buses, and get them in sale-ready condition. Id. at 10. The prices listed in Exhibit 1 - the strike prices - were based on the average market values **if** the buses were in average condition and saleable. Id. at 7, 10, 74, 75, 111-112. As of September 18, 2002, most of them were not.

### FOURTEEN MC-5C'Ss

Two MC-5C's (VIN nos. S14053 and S14004) had been transported to Alaska and had some work done on them Id. at 14. Vandersnick placed the FVM at $5000 for those buses based upon their condition and the amount of money for which they were sold, having been sold on consignment at Peterbilt in Anchorage. Id. Weatherington valued the same buses at $4500, the amount for which they were actually sold, more than a year after September 18, 2002. Id. at 15, 77-79.

Most of the MC-5C's had the same value because they were a very similar fleet

of coaches worth about the same amount of money. Id. at 15. The MC-5C X5C 1000 was painted and was in a more sale - ready condition; therefore, it was priced at $5000 by Vandersnick and at $5500 by Weatherington, as compared to the others at $2500 set by Vandersnick (Id. at 15) and $3000 by Weatherington. These buses were in very poor condition - none were sale-ready, the tires were not legal, parts were missing, the buses were rusty. Id. at 16. The buses needed extensive work to even be driven. Id. at 16.

The MC-5C's were purchased from Nimco, in New Jersey. Id. at 16. Nimco is a salvage yard. Id. at 17. All of the MC-5C's were rusty. Id. at 51, 68. These could only be called "junk". Id. at 81. The MC-5C's were originally owned by Greyhound, who operated them in Saudi Arabia. Id. When the contract was lost in Saudi Arabia, the buses were moved to Nevada. They were then owned by Coach USA and transferred when they purchased Arrow in Connecticut, where they stayed until they went to Nimco. Id. Buses from Connecticut and New Jersey were often rusty from salt damage. Id. at 16-17.

### THREE MC-5C'S WITH NO TITLES

Three MCI MC-5C buses were valued at $0 because no titles were ever issued for those buses and they could not be sold, specifically the 1980 MCI MC-5C VIN

Nos.' S14108, S14109, and S14028. Id. at 15-16, 81. The parts of these buses would only be used by someone else with MC-5C's and that person would have been Phillips. Id. at 81-82. Phillips had the market on those buses and was trying to sell them at the same time; there was no market for parts.

### FIVE 1985 96-A2'S

There were five 1985 MCI 96-A2 buses appraised by Vandersnick and Weatherington that had been sold to the Great Canadian Railtour Co. LTD. on December 5, 2002. Exhibit 4. The 1985 MCI 96-A2 VIN no. ending in 5059 was valued by Vandersnick at $10,000 and by Weatherington at $17,000. This was a decent coach, still rare because it was a two-axle bus and is not legal in all states. Id. at 18, 84. The MCI 96-A2, VIN no. ending in 5062, was also valued at $10,000. The 5051 had a bad engine and was valued at $2500, and the 5056 had a rear end that needed to be replaced and was valued at $5000; both of these buses were located in Tonopah, Nevada. Id. at 18-19, 84  Added to list was a fifth 1985 MCI 96-A2, VIN no. ending in 05048; Vandersnick appraised it at $10,000, Weatherington at $17,000. This bus was in Alaska, but the market for it was very small. Id. at 23, 84.

### FOUR 102-A3'S

The 1987 MCI 102-A3's with VIN no. ending in 5933, valued at $15,000 by Vandersnick, and at $17,000 by Weatherington, had a bad interior. Id. at 19-20. The

seats were ripped, faded and very filthy. Also, this bus and others were not at maximum capacity; they were missing seats. The reduced seating capacity drastically cuts the market base down unless the additional seats are added or a customer is found willing to add the seats themselves. Id. at 20. The 1989 MCI 102-A3 with VIN no. ending in 6699 was valued at $17,000. This bus also had a bad interior and not enough seats. Id. Both of these buses also needed paint. Id. at 21.

Two additional MCI 102-A3's were part of this same fleet and in the same condition. The 1986 MCI 102-A3 ending in VIN no. 5530 and a 1987 MCI 102-A3 ending in VIN no. 5934 were each valued at $15,000 by Vandersnick, and $14,000 and $17,000 respectively by Weatherington. Id. at 23, 76. These buses had the same problems and the same bad interiors. Id. at 23. Weatherington described the 1986 as having a stick shift and not being worth as much. Id. at 76.

## VANHOOLS AND PREVOST

The 1989 Vanhool T815, with VIN no. ending in 9296, was given a FMV of $25,000. Some moderate body damage existed on this bus and it needed extensive A/C work, but the interior was nice. Id. at 21.

The 1989 Vanhool ending in VIN no. 5886 was valued at $5000. This was one of the three T809 Vanhool's in the inventory. The T809 Vanhools were 28-passenger buses, a smaller version of a highway coach. The no. 5886 bus was the only one of the

three that was running, but it was not in sale-ready condition. The interior was poor and the engine smoked. Id. at 21. The 1989 Vanhool with VIN no. 5813 had been damaged while in shipping from New Jersey - it hit a bridge and had extensive air-conditioning and roof damage - so it was valued at $2500 by Vandersnick, $2000 by Weatherington. Id. at 21-22. Another 1989 T809 Vanhool, VIN no. ending in 15867, was totaled - it was extensively damaged while being loaded onto a trailer for shipping from New Jersey; it's FMV was $0. Id. at 22, 24. There were no useable parts on this one. Id. at 85. All three of the Vanhool T809's were rusty. Id. at 51.

The 1981 Prevost, VIN no. 01990, was in Alaska and valued by Vandersnick at $11,000, and by Weatherington at $17,000.

DEFENDANT'S EXHIBITS P - T:

The bus depicted in defendant's Exhibits P through T is not one of the buses involved in Phillip's fraud; his purporting that it is only continues his fraudulent conduct. Vandersnick had never seen the bus depicted in these photographs. Id. at 49, 57. It is a photo of a T809 Vanhool, but it was not one of the buses that the VA had in their inventory from Phillips, and the pictures in those exhibits have nothing to do with the buses given to Northwest to sell pursuant to its contract with the VA. Id. at 49, 57. The bus depicted in Ex. P had been painted and reconfigured. There were only three T809's in the inventory and they were all in Vandersnick's Northwest Sales yard.

<u>Id</u>. at 49.

## CONCLUSION

The total FMV for the buses established by Vandersnick was $178,000, and $203,000 by Weatherington. (The total in Exhibit 3 seems to have been mis-calculated.) (See Exhibits 2, 2A, 3 and 3A.) These are generous assessments considering the conditions of the buses. These amounts do not include the cost of getting the buses into the condition to be sold, nor the costs of actually selling the buses, which is an additional loss to the VA for which they receive no compensation from Phillips. Either of these amounts, or their average, more than equal the FMV of the buses on September 18, 2002, the day Phillips relinquished control of them to the VA. Offsetting that amount against the original loss to the VA from Phillips fraud - $450,375.37 - is more than fair to the defendant.

RESPECTFULLY SUBMITTED this 21st day of February, 2006, in Anchorage, Alaska.

        DEBORAH M. SMITH
        Acting United States Attorney

        <u>s/Retta-Rae Randall</u>
        Assistant U.S. Attorney
        Federal Building & U.S. Courthouse
        222 West Seventh Avenue, #9
        Anchorage, Alaska  99513-7567

Phone: (907) 271-5071  
Fax: (907) 271-1500  
E-mail: rettarae.randall@usdoj.gov

I hereby certify that on February 21, 2006, a copy of the foregoing was served electronically on:
 Meredith A. Ahearn.

s/Retta-Rae Randall

U.S. v. RONALD PHILLIPS  
CASE NO. 3:03-cr-0078-JKS                    10