HAGANS, AHEARN & WEBB
310 K Street, Suite 400
Anchorage, AK  99501
(907) 276-5294

Attorney for Defendant

UNITED STATES DISTRICT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RONALD LEE PHILLIPS, | ) |
| | ) Case No. 3:03-cr-0078-JKS |
| Defendant. | ) |
| | ) |

## DEFENDANT'S REPLY TO GOVERNMENT'S HEARING ARGUMENT

The majority of the Government's argument seems to be a reprise of its underlying case against the Defendant.  Defendant's actions were not the subject matter of this hearing.  Mr. Phillips accepted responsibility for his actions, cooperated with the Government to the best of his ability, pled guilty, was sentenced by this Court, and served that sentence.  The only issue before this Court is the value of the fleet of buses which he turned over to the Government.

The Government's argument is also replete with references to rusted-out buses, buses it classifies as "junk," and other undocumented and unsupported testimony.  Repetition does not make a statement true.  The fact is that Mr. Weatherington, a recognized expert in the

field, the acting agent for Mr. Phillips, not only saw the buses in question, having purchased over half of them himself, before the strike price list was established and agreed upon; he worked on some of them; and he was paid in excess of $80,000 to improve the buses, most of which he has not accounted for.  Tr. 2-102.  Not only is $80,000 unaccounted for, but when questioned on cross-examination, Mr. Weatherington rather nonchalantly stated that he had kept two Ford motor coaches purchased by Mr. Phillips and failed to include them on the list of buses turned over to the Government.  Tr. 1-104.  Apparently, he had some sort of deal with Northwest or with the Veterans Administration ("VA") whereby he believed that he could keep these buses for some unstated reason, possibly as a fee for his services.  Additionally, there are the buses he purchased from ABC with the $10,000 provided by Mr. Phillips.  These buses or the $10,000 paid should be listed on the strike list as turned over to the VA.  Whatever the reason, the two Ford mini coaches, valued at $20,000 each, and inspected by Mr. Phillips on his visit to Mr. Weathering should be added to the list of buses owned by Mr. Phillips and turned over to the Government.  There is no reason that Mr. Weatherington should benefit from keeping these buses to the detriment of Mr. Phillips, particularly when he had no explanation at hearing for doing so.

If Mr. Weatherington has standing as the expert witness for the Government based on his thirty years of experience in the bus business then, he has credibility as the agent for Mr. Phillips and the person most qualified on September 18, 2003 to fix the fair market value on the fleet of vehicles, some of which he purchased with the intent of going into business with Mr. Phillips, and the vehicles he inspected, transported and stored for Mr. Phillips

This is a case where the wrong company was chosen to liquidate the fleet of buses owned by Mr. Phillips.  This was not Mr. Phillips's choice.  The evidence supports that no money

was spent to develop sales or income potential for the forced liquidation of the buses through local advertising and/or internet development of auction sales.   Instead, these buses were apparently sold to non-advertised, selected parties who either managed to stumble onto Northwest's lot or with whom Northwest had a prior or current business relationship, which may well have resulted in lower prices for the buses with the expectation that this would be to Northwest's advantage in future business transactions with these parties.

Mr. Weatherington was in the unenviable position of trying to serve two masters, as an agent for Mr. Phillips and as an agent for the VA.  Mr. Weatherington was attempting to benefit from both his relationship with Mr. Phillips and with the VA.  He testified that he used $10,000 from VA funds provided to Mr. Phillips to buy buses for his own purpose at an auction because he could benefit from the volume purchase to leverage a better price for himself.  Tr. 1-97-98.   The government cannot now assert that this Court should now rely upon Mr. Weatherington's expertise in assessing the fair market value of the buses in question and at the same time say that Mr. Weatherington did not posses this same expertise when he was dealing with Mr. Philips and when he established the strike price list upon which all of the parties agreed.

Mr. Phillips submits that this Court should not find the fair market values submitted and testified to at hearing by the Government's two witnesses as credible.  These are the same two gentlemen who earlier agreed to a strike price estimate knowing the buses in question, and one of them, Mr. Vandersnick's company, actually sold the buses at a substantially lesser amount for an inflated commission percentage from the Veterans Administration.  Mr. Weatherington has benefited financially from the sale of these buses and from his relationship with Mr. Phillips.

With the benefit of hindsight, Mr. Weatherington and  the VA have now attempted to evaluate buses, allegedly at the September 18, 2002 date, but it is difficult to believe that, given their financial benefit, changing stories, and prior evaluations, these numbers have any real credibility.

The Government complains that Mr. Belanger had very little to go on, and had very little research at his disposal to evaluate these buses.  However, Mr. Belanger certainly used what knowledge and research materials he had at his disposal, unlike Mr. Vandersnick and Mr. Weatherington, who did no research at all and sat down the day of the hearing and scribbled some numbers on an incomplete list of the buses turned over to VA by Mr. Phillips in compliance with the VA's request.  The Government bears the burden of proof in this hearing.  It did not meet its burden.

Perhaps the fairest approach would have been for the VA to hire an independent expert with ties to neither party and ask that expert to compile a list of the buses with suggestions for their resale and the probable values on the date in question.  That person would not be financially invested in any particular value nor influenced and compromised by past relationships.

Like Mr. Weatherington, Mr. Belanger has had many years' experience in the bus industry, including motor coaches similar to or like the ones which Mr. Phillips owned.  Unlike Mr. Weatherington, his opinion was not compromised by his past.  He was absolutely dismayed at the lack of advertising or marketing done by Northwest Bus and believed that its efforts were minimal at best, and more likely negligent.  Tr. 2-66, 67.  This failure cannot not be laid at Mr. Phillips's doorstep.

Mr. Weatherington, at this hearing, suddenly took the position that the majority of buses on his lot and the buses that were transported by him for Mr. Phillips to be refitted for Mr. Phillips's use, which he acknowledged was a good idea, were actually now "junk." Perhaps they were junk because they had been allowed to sit on a lot and deteriorate, some of them for two years, while Northwest did nothing to sell them. There was no evidence that the buses were junk when purchased. Mr. Phillips testified that he had seen some of NIMCO, that he had pictures of the NIMCO buses, he had spoken with NIMCO on numerous occasions, and that these buses were on Mr. Weatherington's lot. Two of them had been transported to Alaska and were in service and in excellent condition. Certainly, Mr. Weatherington is not representing to this Court that the buses he bought through ABC Sales for Mr. Phillips and himself were "junk." The MC-5 buses sat on Mr. Weatherington's lot for some time. Had they been rusted and unable to be put into service, it is reasonable to expect that Mr. Weatherington would have disclosed this to Mr. Phillips. He did not. In fact at the time he made the strike list, he put a value on these buses which he believed to be reasonable. He should be held to that value and not allowed to change his mind after the fact. This Court should not ratify the dismal job the Northwest did in marketing these buses. Northwest chose not to attempt to have titles reissued for the buses with missing titles. Both Mr. Belanger and Mr. Phillips testified that this could have been done. In fact, Mr. Belanger has done it for other buses. Northwest provided no explanation, other than the fact that the title was not there. They did not testify that they made any attempt whatsoever to obtain title. Mr. Phillips should not be penalized for their failure. Nor should he be penalized for the Veterans Administration's failure to pursue insurance claims for the five buses transported to Alaska and the two VanHools which were damaged or destroyed, by third parties whom Mr.

Phillips did not control nor select. If anyone could be faulted, it would be Mr. Weatherington who made the transportation arrangements and chose the companies to transport the buses. The failure of the VA to pursue the insurance claims substantially reduced the value of the buses involved, some to zero. This choice by the VA was ill-advised and it should take the consequences.

Mr. Belanger was a candid witness who accurately stated his extensive and ongoing work in the bus business. He deals with colleagues all over the country. He is very familiar with the market in Alaska. Tr. 2-43, 52. He opined logically that an appraiser should see the buses in question before issuing a strike price, and because Mr. Weatherington is a qualified appraiser and did see them, the original strike price was accurate. Tr. 2-58.

He discussed the option of parting out some of the buses. Tr. 2-55. He noted that the MC-5s were unique buses whose parts would be valuable because of their scarcity. Tr. 2-60. He believed these buses had a value of not less than $10,200 each. Tr. 2-61. He also testified to the option of motor home conversion. Tr. 2-64-65. Obviously, Mr. Belanger had a more global and creative approach to realizing the best price for Mr. Phillips's buses, an approach which, had it been applied, would have resulted in a benefit to all of the parties.

Appended to this brief as Attachment A is a list of the buses Mr. Phillips believes should be included in the fleet to be valued and the values supported by the evidence, assuming reasonable time to advertise and investigate potential purchasers. Tr. 1-3. This Court should also take into consideration the $83,358.00 Mr. Phillips testified was expended from VA funds for the maintenance of buses still in the lower 48 and paid to third party vendors.

DATED at Anchorage, Alaska this _____ day of March 2006.

HAGANS, AHEARN AND WEBB
Attorneys for Defendant


By: /s/ Meredith A. Ahearn
   Alaska Bar No. 6903001
   HAGANS, AHEARN & WEBB
   310 K Street, Suite 400
   Anchorage, AK  99501
   (907) 276-5294:  Phone
   (907) 276-8732:  Fax
   E-mail:  haw@alaska.net


CERTIFICATE OF SERVICE
I certify that a copy hereof was served
electronically this _____ day of March 2006,
on:

Retta-Rae Randall
U. S. Attorney's Office, District of Alaska
222 W. 7th Ave., #9, Room 253
Anchorage, AK 99513


/s/
Meredith A. Ahearn
Hagans, Ahearn & Webb