# United States District Court
## for the
# District of Alaska
### Petition for Warrant or Summons for Offender Under Supervised Release

Name of Offender: Ronald Lee Phillips                    Case Number: 3:03-cr-00078-01 JKS

Sentencing Judicial Officer:       James K. Singleton, Senior U.S. District Court Judge

Date of Original Sentence:         November 13, 2003

Original Offense:                  Conspiracy, Wire Fraud

Original Sentence:                 18 months imprisonment, 3 years supervised release, $358,809.03 restitution to U.S. Veterans Administration reduced to $247,275.57 via amended Judgment

Date Supervision Commenced:        April 15, 2005

Asst. U.S. Attorney: Retta Randall                       Defense Attorney: Meridth Ahern

---

## PETITIONING THE COURT

[ ]   To issue a warrant
[X]   To issue a summons

The probation officer believes that the offender has violated the following condition(s) of supervised release:

| Violation Number | Nature of Noncompliance |
|---|---|
| 1 | The defendant has violated the Special Condition of Supervision "The defendant shall provide the probation officer access to any requested financial information and shall not incur any new debts or apply for credit without the prior approval of the probation officer," in that in January 2007, the offender obtained a loan from Meri Elyn Arnout without the prior approval of the probation officer. This violation is a Grade C violation. |
| 2 | The defendant has violated the Standard Condition number 3, "The defendant shall answer truthfully all inquiries by the probation officer and shall follow the instructions of the probation officer, " in that on January 8, 2008, the defendant was given an instruction to provide to the probation officer copies of documentation for the income and expenses of Alaska Bus Guy in 2007, a copy of a loan agreement between he and Meri Elyn Arnout, and a list of the items in storage at Lybergers, no later than February 1, 2008; however, the offender did not follow this instruction and has not provided the probation officer any of the aforementioned items.  This violation is a Grade C violation. |

*Petition for Warrant or Summons*
*Name of Offender        :     Ronald Lee Phillips*
*Case Number             :     3:03-cr-00078-01 JKS*

U.S. Probation Officer Recommendation:

    The term of supervised release should be:

        [X]    Revoked
        [ ]    Extended for _____ year(s), for a total term of _____ years.

[ ]    The conditions of supervised release should be modified as follows:

        Respectfully submitted,

        **REDACTED SIGNATURE**

        Eric D. Odegard
        Supervising U.S. Probation/Pretrial Services
        Officer
        Date: February 4, 2008


THE COURT ORDERS

[ ]    *The WARRANT FOR ARREST be delivered to the U.S. Marshal's Service; and the petition, probation officer's declaration, and a copy of the warrant shall be sealed in the Clerk's file and disclosed only to the U.S. Attorney for their official use, until the arrest of the offender.* The petition for supervised release revocation is referred to the Magistrate Judge for initial appearance/preliminary hearing(s). The evidentiary hearing, if any, will be before the Magistrate Judge only upon consent; otherwise the evidentiary hearing will be before the undersigned District Court Judge.



    The issuance of a summons. The Petition for Supervised Release revocation is referred to the Magistrate Judge for initial appearance/preliminary hearing(s). The evidentiary hearing, if any, will be before the Magistrate Judge only upon consent; otherwise the evidentiary hearing will be before the undersigned District Court Judge.

[ ]    Other:

        **REDACTED SIGNATURE**

        James K. Singleton
        Senior U.S. District Court Judge

        2/5/08
        Date

**Supervised Release Cases:** Pursuant to 18.U.S.C. § 3401(I), the sentencing District Court may designate a Magistrate Judge to conduct hearings to modify, revoke, or terminate supervised release, including evidentiary hearings, and to submit to the Court proposed findings of facts and recommendations, including disposition recommendations.

**Probation Cases:** Pursuant to *United States v. Frank F. Colacurcio,* 84 F.3d 326, a Magistrate Judge has the authority to conduct a probation revocation hearing **only if** the following three conditions are satisfied: (1) the defendant's probation was imposed for a misdemeanor; (2) the defendant consented to trial, judgment, and sentence by a Magistrate Judge; and (3) the defendant initially was sentenced by a Magistrate Judge. Therefore, a District Court **may not** designate a Magistrate Judge to conduct revocation hearings on probation cases where a District Court was the sentencing Court.

# United States District Court
for the
## DISTRICT OF ALASKA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case Number: 3:03-cr-00078-01 JKS |
| ) | |
| vs.  ) | DECLARATION IN SUPPORT OF PETITION |
| ) | |
| Ronald Lee Phillips ) | |

I, Eric Odegard, am the U.S. Probation Officer assigned to supervise the Court-ordered conditions of Supervised Release for Ronald Lee Phillips, and in that capacity declare as follows:

On November 13, 2003, the offender was sentenced to 18 months imprisonment and three years supervised release as well as restitution to the U.S. Veteran's Administration (VA) in the amount of $358,809.03 and a special assessment of $200. On December 22, 2003, the Court issued an Amended Judgment. On June 1, 2006, as the result of an appeal, the Court issued a 2nd Amended Judgment, which was the same as earlier judgments in all respects but reduced the restitution to $247,275.57. One of the special conditions of supervised release is that the "defendant **shall provide the probation officer access to any requested financial information**, including authorization to conduct credit checks, and **shall not incur any new debts** or apply for credit without the prior approval of the probation officer." A standard condition of the Court's judgment (number 3 ) is that the offender "shall answer truthfully all inquiries by the probation officer and shall follow the instructions of the probation officer."

On April 15, 2005, the term of supervised release commenced with a termination date of April 14, 2008. On April 18, 2005, the offender met with U.S. Probation Officer Charlene Wortman, who informed the offender of the conditions of supervised release. That day, the offender signed a copy of the judgment acknowledging that he understood those conditions and had been provided a copy of them.

On May 30, 2007, the probation officer discovered a Internet web site, operated by the offender, called "Alaska Bus Guy" at www.alaskabusguy.com. The web site advertised "cheap fares for frugal travelers" and listed several prices for transportation to several destinations in Alaska. According to the site, the operating authorities are State of Alaska Business License 74106 (sic), U.S. DOT 821737, and Fairbanks City Business License No. 0741076-1. The offender listed his residence as 205 Orange Leaf Circle, Anchorage, Alaska and P.O. Box 05482, Fairbanks, Alaska. He advertised contact information as: Toll Free 1 888 340-9612; phone Anchorage 907 677-9612; phone Fairbanks 907374-9612; fax (907) 338-2901, and Email ron@alaskabusguy.com.

On May 31, 2007, the probation officer received the offender's monthly supervision report for May 2007 and under the heading "Employment" the offender wrote "None."

On June 1, 2007, the probation officer spoke to the offender about the web site and the business that he was operating. The offender initially asked how the probation officer had discovered the web site. The probation officer explained that the Internet is public and any information posted thereon could be accessed by anyone. The offender was again asked why he hadn't listed "Alaska Bus Guy" on his monthly report as employment or listed any income from it under the financial section of the report. The offender responded that it was a "hobby" and that he was not making money, as his profits were being eaten up by expenses. He advised that he had made four trips in mid-May, all to Denali National Park, and had made less than $1,000 and all the profits were consumed by gas and oil expenses. The offender advised that he was operating a 1993 Ford Bus and that all his other vehicles were stored at Lyberger's storage lot on Old Seward Highway. The offender stated that he would be operating the business for only four months and that it was "exploratory" in nature in an effort to see if any money could be made. The offender was then instructed to list "Alaska Bus Guy" on future monthly report forms as self employment and to record all net income from it's operation on the monthly report form as well. During the conversation, the offender disclosed that he had opened an account at Alaska USA Federal credit Union for the purpose of cashing the checks he received from customers.

On June 30, 2007, the probation office received the offender's Monthly Supervision Report for June 2007. Under the heading "Employment" the offender wrote, "Self." Under the heading "position held" the offender wrote, "Volunteer." The offender listed no income from this -"Self" employment anywhere on the report.

On July 5, 2007, the probation officer sent a letter to the offender (copy attached).

On July 6, 2007, the probation officer went to Lyberger's storage lot and confirmed that the offender had rented at least 10 spaces there paying at least $400 per month for storage fees.

On July 16, 2007, the probation officer received a letter from the offender (attached).

On August 10, 2007, the probation officer reviewed the offender's July 2007 Monthly Supervision Report and the offender wrote "Self" under the heading "Employment" and "Owner/Operator" under the heading "Position Held." He listed no income from "Self" employment anywhere on the report.

On September 10, 2007, the probation officer sent another letter to the offender (copy attached).

On September 19, 2007, the probation office received a letter from the offender (copy attached) indicating that the offender was paying for the space rent at Lybergers with a "personal loan," which had been repaid from business income.

On October 5, 2007, the probation officer sent another letter to the offender (copy attached) requesting among other things "documentation as to your 'personal loan" which "Paid for 10

spaces ay Lyberger's..." " for example I want to know from whom you borrowed the money and when and how much was borrowed."

On October 22, 2007, the probation officer received a letter from the offender wherein he states that he paid for the Lyberger storage fee with a loan from Meri Elyn Arnout, who has "made available several incremental loans." Attached to this letter is a handwritten page regarding the finances of Alaska Bus Guy in 2007 indicating that his gross income was $43,752.92 and his gross net expenses were $43,210.93 for a net income of $547.99. It also lists "outstanding debt as $2,703.99 for a loss of personal income of $2,156.00.

On January 8, 2008, the offender appeared before the Honorable John D. Roberts in a hearing related to his Alaska Permanent Fund Dividend and testified that he had obtained two loans from Meri Elyn Arnout in the amounts of $8,000 and $16,000. Following the hearing and with the offender's attorney present, the probation officer asked the offender when he obtained the loans to which he had testified (and were previously mentioned in the letter of September 2007) and the offender responded that it was January 2007 and that there was paperwork associated with the loans (i.e. a loan agreement). When the probation officer pointed out that the offender was prohibited from incurring any new debt without **prior approval of the probation officer**, the offender first told the probation officer, "you knew." When the probation officer denied ever giving **prior approval for the offender to incur debt** in January 2007, the offender then, again in the presence of his attorney, characterized the loans as "gifts" which he could pay back or not. At that point, with the offender's attorney present, the probation officer instructed the offender to provide the probation officer copies of all the documentation as to Alaska Bus Guy's income and expenses in 2007 to substantiate the income and expense figures he had previously submitted, a copy of the loan agreement between he and Meri Elyn Arnout which he used to rent the Lybergers spaces, and a list of the items currently in storage at Lybergers no later than February 1, 2008. The offender advised that he did not want to provide the probation officer original documents and was then advised by the probation officer that copies would suffice.

On January 16, 2008, the probation officer sought a Court Order permitting the probation officer to inspect the items, owned by the offender, stored at Lybergers, a/k/a C.J.L. RV Storage, which order was signed on January 23, 2008 (see Docket 154).

On January 28, 2008, the probation officer went to C.J.L. RV Storage and presented the aforementioned Court Order. The probation officer was informed that the subject rents 12 spaces on the Lyberger's lot (i.e. RV 20, 60, 62, 68, 84, 85, 141, 187, 206, 231, 322, and 323) at a cost of $35 per month each (i.e. $420 for all per month) and was provided copies of the rental agreements. The earliest date on the rental agreements was October 2006. The last payments made by the offender were in December 2007 and in January 2008 which paid for all 12 spaces for another six-month period. The spaces were inspected and contained 11 vehicles (space RV 20 was empty), which were primarily busses and some trucks. Photographs were taken of all the stored vehicles and are maintained in the probation officer's file. The probation officer then traveled to 205 Orange Leaf Circle and noted the following additional vehicles: a 1993 Red Ford Van (Alaska License plate EHU 883, which is the vehicle which was used in the Alaska Bus Guy business in the summer of 2007); a 1983 Orange Chevy Pickup (Alaska License Plate 5056CU);

and a Fifth Wheel Trailer (make, model, and ownership unknown).

At no time during the period of supervision did the offender ask for or was given permission to incur debt in the form of a loan from anyone. Additionally, as of February 1, 2008, the offender had not followed the previous instruction of the probation and had not provided the documentation (copies of checks for income and receipts for expenses) regarding the income and expenses for Alaska Bus Guy from 2007, the loan agreement between he and Meri Elyn Arnout, or the list of items in storage at Lybergers in Anchorage.

Executed this 4nd of February, 2008, at Anchorage, Alaska, Alaska, in conformance with the provisions of 28 U.S.C. § 1746.

I declare, under penalty of perjury, that the foregoing is true and correct, except those matters stated upon information and belief, and as to those matters, I believe them to be true.

**REDACTED SIGNATURE**
_____
Eric Odegard
U.S. Probation Officer

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ALASKA**
PROBATION AND PRETRIAL SERVICES OFFICE

JOSHUA M. WYNE, Chief
U.S. Probation/Pretrial Services Officer

*EXCELLENCE IN PROBATION SERVICES*

FEDERAL BUILDING
& U.S. COURTHOUSE
222 WEST 7TH AVENUE, #48
ANCHORAGE, AK 99513-7562
(907) 271-5492, Fax 271-3060

**REPLY REQUESTED TO**

☒ ANCHORAGE
☐ FAIRBANKS

FEDERAL BUILDING
& U.S. COURTHOUSE
101 12TH AVENUE, BOX NO. 3
FAIRBANKS, ALASKA 99701-6281
(907) 456-0266, Fax 456-0293

July 5, 2007

Ronald Lee Phillips
205 Orange Leaf Circle
Anchorage, Alaska 99504

**RE: June Monthly Supervision Report**

Dear Mr. Phillips:

I received your June 2007 Monthly Supervision Report and have some additional questions.

1. Doing business as Alaska Bus Guy, how many trips with paying passengers did you transport in June 2007? How many total passengers were transported in June 2007 by Alaska Bus Guy?

2. How much money was received by Alaska Bus Guy from those passengers in June 2007?

3. What where the total expenses for Alaska Bus Guy in June 2007?

4. When do you anticipate moving from 205 Orange Leaf Circle?

5. What are your monthly expenses for storage at Lybergers?

Please respond in writing. Thank you for your cooperation.

Sincerely,

**REDACTED SIGNATURE**

Eric D. Odegard
U.S. Probation Officer

EDO:edo

Eric D. Odegard
Federal Building
222 W. 7th Ave. #48
Anchorage, AK 99513

July 14, 2007

Update to May/June 07 Monthly Supervision Report.

1-3) I have been on a charter since June 30th. Charter will end July 19th. I have not been able to compile the June INCOME / EXPENSES report. Will work on June and July after July 19th.

Included is the May 2007 preliminary INCOME /EXPENSE REPORT.

4) Uncertain. I am on a month-to-month lease. Will inform you when any change occurs.

5) Lyberger storage is about $40 per month, per space.


Sincerely,


Ron Phillips

c.c. Meredith Ahearn, atty.

2007 May INCOME

| May | | An-DNP | An-Fbks | DNP-Fbks | Fbks-DNP | DNP-Anch |
|---|---|---|---|---|---|---|
| 1 | Lei (rt) | 125 | | | | |
| 2 | Gates | 57 | | | | |
| 2 | Mitchel (4) | | 260 | | | |
| 8 | Wasrnewski | 55 | | | | |
| 8 | McNalley | 87 | | | | |
| 8 | Perce | 40 | | | | |
| 8 | Lopez | 40 | | | | |
| 10 | Slavko (2) | 175 | | | | |
| 15 | Lukdsz | 40 | | | | |
| 15 | Knutzson (2) | 114 | | | | |
| 15 | Delgadillo | 40 | | | | |
| 15 | Chappy | 40 | | | | |
| 15 | Randell | 40 | | | | |
| 15 | Kilinski | 40 | | | | |
| 16 | Williams | 109 | | | | |
| 16 | Ferad (5) | 200 | | | | |
| 17 | Knutzn (2) | 114 | | | | |
| 17 | Barrett | 42 | | | | |
| 20 | Machemf | 75 | | | | |
| 20 | Ann Marie | | | | 95 | |
| 20 | Rich | 43 | | | | |
| 21 | Bradley (2) | | | | | 114 |
| 21 | McClarin | 42 | | | | |
| 25 | Ciblic (5) | 275 | | | | |
| 25 | O'Niell | 65 | | | | |
| 25 | Ryan | 40 | | | | |
| 25 | Schwing | 40 | | | | |
| 25 | Lindia | 40 | | | | |
| 25 | Salch | 40 | | | | |
| | McNalley | | 87 | | | |
| 26 | Wilson | 62 | | | | |
| 26 | Tara | 62 | | | | |
| 29 | Drake | 55 | | | | |
| 29 | Moodie | 30 | | | | |
| 30 | Richie | 50 | | | | 80 |
| 30 | Newman | 50 | | | | |
| 31 | Stone | 47 | | | | |
| 31 | Ford | 47 | | | | |
| 31 | Marchant (2) | 120 | | | | |
| 31 | Katz | 55 | | | | |
| 31 | Victonici | 45 | | | | |
| 31 | SerGay | 45 | | | | |
| | | 2686 | 347 | | 95 | 194 |

60 paid fares received

3,322.00  
EXPENSES  April/May          2699.04

Carried foward to June expenses   **$622.96**

Page 1a

EXPENSES: May 2007

p. 1

| Provider | Fuel | Parts | Misc | Office | Meals | Repairs |
|---|---|---|---|---|---|---|
| | 793.58 | | 149.45 | | 12 | 115.1 |
| May | | | | | | |
| 2 Tesoro | 75 | | | | | |
| 4 Sams | | | 7.53 | | | |
| 5 FM | 75 | | | | | |
| 7 FM | 16.54 | | | | | |
| 8 FM | 75 | | | | | |
| 11 Ford | | | | | | 540 |
| 10 FM | 30 | | | | | |
| 12 Home Depot | | | 80.07 | | | |
| 13 WalMart | | | 48.96 | | | |
| 15 FN | 67.37 | | | | | |
| 19 WalMart | | | 45.94 | | | |
| 19 Sears | | | 88.98 | | | |
| 20 FM | 75.01 | | | | | |
| 20 FM | 21.95 | | | | | |
| 21 FM | 14.98 | | | | | |
| 22 COSTCO | | | | | 10.88 | |
| 24 FM | 75 | | | | | |
| 24 FM | 15.02 | | | | | |
| 25 Fred Meyer | 75 | | | | | |
| 27 FM | 75 | | | | | |
| 27 Home Depot | | | 43.2 | | | |
| 29 Carrs | 72.48 | | | | | |
| | 1556.93 | | 464.13 | | 22.88 | 655.1 |
| | | | | | | 2699.04 |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ALASKA**
PROBATION AND PRETRIAL SERVICES OFI
*EXCELLENCE IN PROBATION SERVICES*

JOSHUA M. WYNE, Chief
U.S. Probation/Pretrial Services Officer

REPLY REQUESTED TO

☒ ANCHORAGE
☐ FAIRBANKS

FEDERAL BUILDING
& U.S. COURTHOUSE
222 WEST 7TH AVENUE, #48
ANCHORAGE, AK 99513-7562
(907) 271-5492, Fax 271-3060

FEDERAL BUILDING
& U.S. COURTHOUSE
101 12TH AVENUE, BOX NO. 3
FAIRBANKS, ALASKA 99701-6281
(907) 456-0266, Fax 456-0293

July 5, 2007

Ronald Lee Phillips
205 Orange Leaf Circle
Anchorage, Alaska 99504

**RE: June Monthly Supervision Report**

Dear Mr. Phillips:

I received your June 2007 Monthly Supervision Report and have some additional questions.

1. Doing business as Alaska Bus Guy, how many trips with paying passengers did you transport in June 2007? How many total passengers were transported in June 2007 by Alaska Bus Guy?

2. How much money was received by Alaska Bus Guy from those passengers in June 2007?

3. What where the total expenses for Alaska Bus Guy in June 2007?

4. When do you anticipate moving from 205 Orange Leaf Circle?

5. What are your monthly expenses for storage at Lybergers?

Please respond in writing. Thank you for your cooperation.

Sincerely,

**REDACTED SIGNATURE**
Eric D. Odegard
U.S. Probation Officer

EDO:edo

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
PROBATION AND PRETRIAL SERVICES OFFICE

*EXCELLENCE IN PROBATION SERVICES*

JOSHUA M. WYNE, Chief
U.S. Probation/Pretrial Services Officer

**REPLY REQUESTED TO**

☒ ANCHORAGE
☐ FAIRBANKS

FEDERAL BUILDING
& U.S. COURTHOUSE
222 WEST 7TH AVENUE, #48
ANCHORAGE, AK 99513-7562
(907) 271-5492, Fax 271-3060

FEDERAL BUILDING
& U.S. COURTHOUSE
101 12TH AVENUE, BOX NO. 3
FAIRBANKS, ALASKA 99701-6281
(907) 456-0266, Fax 456-0293

September 10, 2007

Ronald Lee Phillips
205 Orange Leaf Circle
Anchorage, Alaska 99504

**RE:  Alaska Bus Guy**

Dear Mr. Phillips:

I received your August 2007 Monthly Supervision Report and have some additional questions about July and August 2007.

1. Doing business as Alaska Bus Guy, what was your gross receipts, total expenses, and net profit in July and August 2007.

2. When do you anticipate moving from 205 Orange Leaf Circle?

3. How many spaces are you renting at Lybergers and how long have you been doing so?

Please respond in writing. Thank you for your cooperation.

Sincerely,

**REDACTED SIGNATURE**
Eric D. Odegard
U.S. Probation Officer

EDO:edo

Ronald Phillips
205 Orangeleaf Circle
Anchorage, AK 99504

US Probation PTS
Anchorage, Alaska

2007 SEP 19 AM 8: 10

United States Probation
Federal Building
222 W. 7thy Ave. #48
Anchor4age, AK 99513-3060

9/18/07

Attn: Eric Odegard, Probation Officer

To the best of my accounting ability I show the following July/August 2007 Income/Expenses.
1.
| | |
|---|---|
| July Income: | 13,498.96 |
| July Expenses: | 13,261.66 |

Income exceed expenses:  $237.30

| | |
|---|---|
| August Income: | 10,765.00 |
| August Expenses:9 | 9,605.64 |
| Expenses exceed income: | $1,159.36 |

| | |
|---|---|
| July/August Income: | 24,263.96 |
| July/August Expenses: | 22,867.30 |
| Gross | $ 1,396.66 |

This remaining income is dedicated for upcoming storage payment.
No business income has been taken for personal income purposes. There remain business/vehicle expenses that are scheduled for next year when additional income becomes available.

2.
Moving date uncertain. On 30 day notice lease. Will inform you when I receive notice.

3.
Paid for 10 spaces at Lyberger's with a personal loan. The loan has been repaid from business income.

Sincerely,


Ronald Phillips

c.c. Meredith Ahearn, attorney

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ALASKA**
PROBATION AND PRETRIAL SERVICES OFFICE

*EXCELLENCE IN PROBATION SERVICES*

JOSHUA M. WYNE, Chief
U.S. Probation/Pretrial Services Officer

**REPLY REQUESTED TO**

☒ ANCHORAGE
☐ FAIRBANKS

FEDERAL BUILDING
& U.S. COURTHOUSE
222 WEST 7TH AVENUE, #48
ANCHORAGE, AK 99513-7562
(907) 271-5492, Fax 271-3060

FEDERAL BUILDING
& U.S. COURTHOUSE
101 12TH AVENUE, BOX NO. 3
FAIRBANKS, ALASKA 99701-6281
(907) 456-0266, Fax 456-0293

October 5, 2007

Ronald Lee Phillips
205 Orange Leaf Circle
Anchorage, Alaska 99504

RE:  Alaska Bus Guy

Dear Mr. Phillips:

I received your letter of September 18, 2007. Thank you.

Regarding your Income and Expenses for your business "Alaska Bus Guy," please send me copies of your business records, which establish your income (e.g. copies of checks or other forms of payments by customers including the $15,000 payment by An-Chi Hwang) and expenses (e.g. receipts for gas, maintenance, etc.) for June, July, August and September 2007. Also send me copies of your monthly bank statements (i.e. June, July, August, and September 2007) for the bank account(s) you are using to operate that business.

As always please keep me informed if you move from your current address and provide me a copy of the "month to month lease."

Finally, based on your having ten spaces at Lybergers at $40 per month I calculate your monthly storage bill there at $400 per month. Please provide me a copy of your rental agreement with Lybergers and documentation as to your "personal loan" which "Paid for 10 spaces at Lyberger's..." For example I want to know from whom you borrowed the money and when and how much was borrowed. Also send me a detailed description of the items stored at Lybergers.

Please respond in writing and include the requested documents. Thank you for your cooperation.

Sincerely,

**REDACTED SIGNATURE**

Eric D. Odegard
U.S. Probation Officer

EDO:edo

cc: Meredith Ahern, Attorney
    Retta-Rae Randell, Assistant U.S. Attorney

Ronald Phillips
205 Orangeleaf Circle
Anchorage, AK 99504

10/16/07

Probation & Pretrial Services Office
333 W. 7th Ave. #48
Anchorage, AK 99513-7562

Attn: Eric Odegard, Probation Officer

Dear Sir
Attached is a summary Balance Sheet for Alaska Bus Guy 2007, and a copy of my month-to-month lease.

I have an appointment with Anne Seeley (Anne's Bookkeeping Service: 563 9058) on October 26, 2007 to formalize my business Income and Expenses. Anne will help to set-up the bookkeeping for the business. It will be several weeks after our October meeting before the more complete accounting can be provided.

The attached Summary Balance Sheet provides accounting of the An-Chi Hwang tour. However, the full payment for that tour was not $15,000 but $14,800. I would not reduce the tour pricing to $10,000 as they requested and An-Chi made a complaint that he was being overcharged.

My pricing for the An-Chi group was offered more than 30 days prior to the start date of the tour. They deposited $7,500 in my account in August and were supposed to pay the balance upon arrival September 2nd. I was forced to call the State Troopers and report a refusal to pay against An-Chi before he would pay any part of the balance due. This upset him. The contract was for the balance to be paid upon arrival and I was not paid any of the balance for three days, then only $1,700 which was deposited (in that amount) in the bank account. Not until the last day of the tour did I finally receive payment and then only after I agreed to reduce the payment by $200. This was a attempted shake-down by An-Chi. A tactic I observed him repeatedly use on other vendors: i.e. motel, restaurants. My refusal to reduce the tour fee to $10,000 prompted him to make a complaint against me. You can verify this through Meredith Ahearn. The $4,800 balance was part of a $6,000 deposit I made in September.

Income and expense payments are presented in the Summary Balance Sheet and the $43,752.92 Gross Income.

As to the Lyberger storage: I have vehicles of the same model and make that I had from my other business. These vehicles are intended for future service (if they can be repaired) and/or parts required to put a vehicle into service. The approximate $12,000 in vehicle repairs and the $2,236.47 in parts went to make serviceable the vehicle I used.

The Lyberger storage fee was paid for with a loan from Meri Elyn. Meri Elyn Arnout has made available several incremental loans. I have repaid her $8,000 this season and still owe her more than $2,500.

I will provide a final accounting and a copy of my 2007 income tax when completed..

Thanks,

Ronald Phillips

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
PROBATION AND PRETRIAL SERVICES OFFICE
*EXCELLENCE IN PROBATION SERVICES*

JOSHUA M. WYNE, Chief
U.S. Probation/Pretrial Services Officer

REPLY REQUESTED TO

☒ ANCHORAGE
☐ FAIRBANKS

FEDERAL BUILDING
& U.S. COURTHOUSE
222 WEST 7TH AVENUE, #48
ANCHORAGE, AK 99513-7562
(907) 271-5492, Fax 271-3060

FEDERAL BUILDING
& U.S. COURTHOUSE
101 12TH AVENUE, BOX NO. 3
FAIRBANKS, ALASKA 99701-6281
(907) 456-0266, Fax 456-0293

October 5, 2007

Ronald Lee Phillips
205 Orange Leaf Circle
Anchorage, Alaska 99504

**RE: Alaska Bus Guy**

Dear Mr. Phillips:

I received your letter of September 18, 2007. Thank you.

Regarding your Income and Expenses for your business "Alaska Bus Guy," please send me copies of your business records, which establish your income (e.g. copies of checks or other forms of payments by customers including the $15,000 payment by An-Chi Hwang) and expenses (e.g. receipts for gas, maintenance, etc.) for June, July, August and September 2007. Also send me copies of your monthly bank statements (i.e. June, July, August, and September 2007) for the bank account(s) you are using to operate that business.

As always please keep me informed if you move from your current address and provide me a copy of the "month to month lease."

Finally, based on your having ten spaces at Lybergers at $40 per month I calculate your monthly storage bill there at $400 per month. Please provide me a copy of your rental agreement with Lybergers and documentation as to your "personal loan" which "Paid for 10 spaces at Lyberger's..." For example I want to know from whom you borrowed the money and when and how much was borrowed. Also send me a detailed description of the items stored at Lybergers.

Please respond in writing and include the requested documents. Thank you for your cooperation.

Sincerely,

**REDACTED SIGNATURE**
Eric D. Odegard
U.S. Probation Officer

EDO:edo

cc: Meredith Ahern, Attorney
    Retta-Rae Randell, Assistant U.S. Attorney

Income
Jan $
Feb $
Mar $
Apr $
May $

June/July   12,493.96
Aug         25,558.96
Sept         7,700.—          43,752.92

Expenses:
         Fuel     Parts    Office   Repairs   Insurance   Fees    Adv.   Storage   Gross      Business Acct
                                                1150      150.—   847            5,708.01   5,708.01
Jan      98.01            190                             250.—   715.—           1,592.49   1,592.49
Feb     253.30           374.13                           250.—                     225.15    225.15
Mar      49.—             54.15    122.—                 275.—   665.—           1,550.20   1,550.20
Apr      85.03    400.—  125.17   627.54                 275.—                   2,828.14   2,828.14
May     100.—    970.67  804.93  4826.24
June/July 5,874.40 2797.70 165.55 6738.25    585.—                        3300.— 18,568.87
Aug     1,756.60 2236.47 1839.96                                                  12,540.98
                          1187.27                                                  1,187.27

                                                                                  43,210.93


Business Acct                    Gross Income    43,752.92
Jan    5,708.01                  Gross Net Exp.  43,210.93
Feb    1,592.49                                  ─────────
Mar      225.15                                    547.99
Apr    1,550.20                  Outstanding Acct  < 2,703.99 >
May    2,828.14
                                 Personal Income  < 2,156.00 >   LOSS
                                                                 ════

July
Aug
Sept

              11,903.99  11,903.99
Oct 8/1       -2,200.—    8,703.99
Since 9/1     -6,000.—    2,703.99

Acct Balance  2,703.99

John Connor
269 6013
RECEIVED 2006
RECEIVED OCT 2 0 2006

# Dwelling Lease Agreement

This Agreement made this 30 day of Sept, 2006, is entered into between Meri-Elyn Arnout, (hereafter called "Lessor") and Ronald Phillips (hereafter called "Lessee").

In consideration of the mutual covenants contained herein and other valuable considerations, Lessor and Lessee mutually agree to as follows:

1. PREMISES. Lessor shall lease unto the Lessee a room at the premises known as 205 Orange Leaf Circle, anchorage, AK 99504. Lessee shall have shared access to kitchen, bath, living room and laundry facilities.

2. TERM OF AGREEMENT. This agreement shall be month-to-month beginning on October 1, 2006 and continue on a month-to-month basis thereafter.

3. RENT. Rent for the room and use of the common area(s) shall be $500.00 per month, payable in advance on or before the first day of each month with out demand or notice. A penalty of Ten Dollars ($10.00) per day, fifty dollars ($50.00) maximum, will be assessed if the rent remains unpaid after the close of business on the fifth (5th) day of the month.

4. SECURITY DEPOSIT. The Lessor has deposited $ 300.00 carried forward as a security for the rental unit, receipt of which is hereby acknowledged. Lessor will be responsible for the deposit for the term of the agreement and shall promptly return the unused portion of the deposit within fourteen (14) days of the Lessee vacating the premises.

5. PETS. No Pets.

6. UTILITIES. Lessee is required to provide for the following utilities: propane for portable space heater, if needed, and as utilized by the Lessee.

7. OCCUPANCY. Lessee shall report any anticipated changes in occupancy to the Lessor, for approval, as soon as possible after Lessee is aware of such changes.

8. ENTRY OF PREMISES: Lessee may not reasonable withhold consent of entry to the premises from the Lessor, their agents, employees or representatives in order to inspect, make necessary or agreed repairs & services or exhibit the dwelling to prospective purchasers, Lessee, workmen or contractors. Entry shall be made during reasonable hours and after written notification of no less than 24 hours (A. S. 34.03.140). Lessor may enter the dwelling at anytime without advance notice or consent of the Lessee in the event of an emergency.

9. VEHICLES/PARKING. Lessee and or guest shall park their vehicles(s) in an appropriate manner only in areas designated for Parking.

1

10. ACCIDENTS AND PERSONAL INJURIES. The LESSOR shall not be liable for any loss or damage to person or property in or around the premises or by reason of fire, theft, leakage, bursting water lines and pipes, overflow of drains or for any other cause, whether damage be suffered by the LESSOR, their family, agents, guests, or any other person. The Lessee shall indemnify and hold harmless the Lessor from such liability except as provided by for Alaska State Law.

11. PERSONAL PROPERTY. <u>The Lessor does not insure personal property of the Lessee.</u>

12. TERMINATION OF TENANCY. The Lessee herby acknowledge their obligation to pay rent for the full term of the agreement as stated in paragraph two (2) above. On month-to-month tenancies, early termination of lease or at the termination of the Agreement Lessee is obligated to furnish a THRITY DAY, (ONE RENTAL PEROID), WRITTEN notice to the Lessor stating their intention to terminate the Agreement and vacate the premises.

13. ADDITIONAL TERMS AND CONDITIONS. Lessor reserves the right to add additional terms, obligations or conditions to lease agreement when required or necessary.

14. REPRESENTATIONS AND WAIVERS. This Agreement evidences the entire agreement between the Lessor and Lessee and no modification hereof shall be vailid unless in writing and signed by the Lessor.

IN WITNESS WHEREOF, Lessor and Lessee have executed this agreement on the last day of September and year of 2006.

_____ 30Sept06          _____ 9/30/06
(Meri-Elyn Arnout) LESSOR   Date           (Ronald Phillips) LESSEE   Date
(907) 384 2426 (work)                      (907) 338 2901 (message)

Page 2 of 2

2